UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| Muth Electric, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Rice Lake West, Inc., f/k/a Stanek Constructors, Inc., and Federal Insurance Company, <br><br> Defendants. | Civil File No. <br><br><br> **COMPLAINT** |

Plaintiff Muth Electric, Inc., for its Complaint against Defendants Rice Lake West, Inc. (f/k/a Stanek Constructors, Inc.) and Federal Insurance Company, states and alleges as follows:

## PARTIES

1. Plaintiff Muth Electric, Inc. ("Muth") is a corporation organized and existing under the laws of the State of South Dakota engaged in the business of electrical contracting, with its principal place of business located at 1717 North Sanborn Boulevard, Mitchell, South Dakota 57301.

2. Upon information and belief, Defendant Rice Lake West, Inc. (f/k/a Stanek Constructors, Inc.) ("Rice Lake West") is a corporation organized and existing under the laws of the State of Colorado engaged in the business of construction contracting, with its principal place of business located at 221 Corporate Circle, Golden, Colorado 80401.

3. Upon information and belief, Defendant Federal Insurance Company ("FIC") is a corporation organized and existing under the laws of the State of New Jersey engaged in the business of insurance and suretyship, with its principal place of business located at 202B Hall's Mill Road, Whitehouse Station, New Jersey 08889.

1

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1).

5.  There is complete diversity of citizenship between Plaintiff and Defendants in this action.

6.  The amount in controversy in this action, exclusive of interest and costs, exceeds the sum of $75,000.

7.  This Court has personal jurisdiction over Rice Lake West because Rice Lake West conducts business in South Dakota, including being the prime contractor for the South Dakota project at issue in this action.

8.  This Court has personal jurisdiction over FIC because FIC conducts business in South Dakota, including being the surety for Rice Lake West for the South Dakota project at issue in this action.

9.  Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to this action occurred in this district.

## FACTS

10. The City of Pierre, South Dakota (the "City") solicited bids in early 2021 for improvements to the existing wastewater treatment plant in the City of Pierre, County of Hughes, State of South Dakota, further identified in the City's solicitation documents as the "Pierre Wastewater Treatment Plant (WWTP) Improvements," Burns & McDonnell Engineering Company project number 119262 (the "Project").

11. Burns & McDonnell Engineering Company ("BMD") was the City's engineer and authorized representative for the Project.

12. BMD developed the design for the Project, including preparing the plans, specifications, notice and call for bid, instructions to bidders, general conditions, agreement between owner and contractor, and other contract documents (collectively, the "Contract Documents").

13. BMD did not complete an adequate site investigation of existing conditions prior to finalizing the Contract Documents.

14. Rice Lake West submitted its bid for the prime contract for the Project.

15. The City accepted Rice Lake West's bid for the prime contract for the Project.

16. The City and Rice Lake West executed a written contract on or around April 20, 2021 (the "Prime Contract").

17. FIC issued a performance and payment bond for the Project as security for the faithful performance of the Prime Contract and for payment of the full value of the labor and materials furnished on the Project, as required for public projects under S.D. Codified Laws § 5–21–1 (the "Bond").

18. Rice Lake West and Muth executed a written contract on or around May 24, 2021 (the "Subcontract").

19. The Subcontract is a valid, binding, and enforceable agreement.

20. Muth's original scope of work under the Subcontract included Division 26 (complete), Division 40 (complete), Division 22 (connections only), Division 23 (connections only), and installing vendor control panels shipped loose with specified equipment, including electrical connections to vendor-supplied equipment, all as provided in the Contract Documents and the Subcontract (the "Subcontract Work").

21. The Subcontract incorporated by reference the Prime Contract, including any Contract Documents incorporated therein, to the extent the Prime Contract and Contract Documents apply to the Subcontract Work.

22. Muth was required under the Subcontract to furnish, deliver, and install all the labor and material necessary to complete the Subcontract Work in accordance with the plans and specifications in the Contract Documents prepared by BMD.

23. On or around July 30, 2021, Muth personnel discovered that the original duct bank design in the plans and specifications in the Contract Documents prepared by BMD was incomplete, defective, and would not have produced a fully functional facility (the "Duct Bank Design Error").

24. The Duct Bank Design Error consisted of, among other things, incorrect quantities of conduits in the existing and planned duct banks, incorrect sizes of conduits in the existing and planned duct banks, duct banks depicted in the plans and specifications that did not actually exist, and routing of existing duct banks inconsistently with the plans and specifications.

25. The Duct Bank Design Error constituted a physical condition at the Project site that differed materially from that shown and indicated in the Contract Documents.

26. The Duct Bank Design Error persisted throughout most of the duct bank system.

27. The Duct Bank Design Error was included in the plans and specifications in the Contract Documents prepared by BMD.

28. On or around August 6, 2021, Muth personnel completed a walk-through of the Project site with BMD personnel.

29. The City and BMD, acting through Rice Lake West, directed Muth to stop work on the Project while they reviewed the Duct Bank Design Error.

30.     The City and BMD, acting through Rice Lake West, directed Muth to complete a site investigation to verify existing conditions.

31.     During the fall and winter of 2021–2022, Muth, Rice Lake West, and BMD exchanged information about the Duct Bank Design Error and potential design changes.

32.     Changes to BMD's original duct bank design were necessary because the original design was incomplete, defective, and would not have produced a fully functional facility.

33.     Changes to BMD's original duct bank design created substantial extra work outside the original scope of the Subcontract and required additional time outside the original scope of the Subcontract (the "Extra Work").

34.     The Extra Work was necessary to complete the Project.

35.     In addition to providing the defective design, the City and BMD, acting through Rice Lake West, compounded Project delays by refusing to approve design changes, to accept proposed change orders, or to provide clear and effective direction in a timely manner.

36.     The City and BMD, acting through Rice Lake West, failed to address the Duct Bank Design Error in a timely manner.

37.     The City and BMD, acting through Rice Lake West, failed to address the Duct Bank Design Error in good faith.

38.     As of January 19, 2022, Muth was standing by waiting for BMD to issue revised drawings or to provide direction on how to proceed.

39.     BMD provided limited direction on how to proceed, including but not limited to comments in response to request for information (RFI) #051 and proposed change order (PCO) #24, by which BMD detailed several design changes in response to the Duct Bank Design Error.

40. Muth proceeded with construction, including performing Extra Work, in reliance upon BMD's limited direction.

41. In an effort to maintain the Project's schedule and to mitigate delays on the Project, Muth proceeded with construction, including performing Extra Work, by following BMD's limited direction.

42. The City and BMD, acting through Rice Lake West, directed Muth to stop work again on or around June 29, 2022.

43. During the summer and fall of 2022, Muth, Rice Lake West, and BMD exchanged further information about the Duct Bank Design Error and potential design changes.

44. The City and BMD, acting through Rice Lake West, continued to compound Project delays by continuing to refuse to approve design changes, to accept proposed change orders, or to provide clear and effective direction in a timely manner.

45. Rice Lake West contributed to Project delays, including but not limited to failing to execute its scope of work with due diligence, failing to consistently have adequate resources and personnel on site, and failing to manage the Project and the schedule in order to minimize delays.

46. Rice Lake West notified Muth on November 4, 2022 of its intention to charge Muth for liquidated damages charged by the City.

47. Muth objected to Rice Lake West's imposition of liquidated damages because the Project delays were caused by factors beyond Muth's control.

48. On or around January 12, 2023, Muth submitted to Rice Lake West proposed change order amounts for the additional cost and time needed to complete the Extra Work (the "January 2023 PCO").

49. The City, acting through Rice Lake West, rejected the January 2023 PCO on or around February 1, 2023.

50. The City, acting through Rice Lake West, offered to pay a considerably lower lump sum with no allowance for winter time and materials and zero contract days for the Extra Work (the "City's Proposal").

51. The City's Proposal, provided through Rice Lake West, did not compensate Muth for the additional cost and time required to perform the Extra Work or otherwise caused by the Duct Bank Design Error, the City, and BMD.

52. Neither the City nor BMD, acting through Rice Lake West, offered any good reason for Muth to accept anything less than full compensation for the Extra Work.

53. Neither the City nor BMD, acting through Rice Lake West, offered any good reason for Muth to accept the assessment of liquidated damages for delays caused by the need to perform Extra Work or otherwise caused by the Duct Bank Design Error, the City, and BMD.

54. The City, acting through Rice Lake West, refused to accept the January 2023 PCO, and instead demanded that Muth accept the City's Proposal.

55. The City and BMD, acting through Rice Lake West, did not review or reject the January 2023 PCO in good faith.

56. Muth substantially completed the Subcontract Work, including the Extra Work and the original scope of work, on or around November 16, 2023.

57. The Extra Work increased the cost and time needed to complete the Subcontract Work.

58. Muth submitted a proposed change order to Rice Lake West on or around December 14, 2023, for the additional cost and time required to perform the Extra Work (the "December 2023 PCO").

59. The December 2023 PCO included pricing for the work placed in 2022 and 2023, and a deduction for the value of work removed from Muth's original scope of work.

60. In total, the December 2023 PCO requested $746,952 and 370 calendar days be added to the Subcontract.

61. The December 2023 PCO included supporting documentation.

62. On January 4, 2024, BMD, acting through Rice Lake West, rejected the December 2023 PCO, stating in part, "The change order that was sent over does not have adequate documentation to be reviewed."

63. Neither BMD nor Rice Lake West identified what additional documentation would be adequate for review.

64. Muth sent Rice Lake West a letter dated January 9, 2024 in response to BMD's assertion that the December 2023 PCO lacked adequate documentation.

65. Muth's January 9, 2024 letter included additional documentation.

66. Muth's January 9, 2024 letter provided additional information in support of Muth's request for 370 calendar days.

67. Muth's January 9, 2024 letter detailed the deductive portion of the December 2023 PCO.

68. Rice Lake West forwarded Muth's January 9, 2024 letter and enclosures to BMD on January 15, 2024.

69. On February 15, 2024, BMD responded, "Per our previous correspondence you were to gather the adequate information . . . the documents you provided do not have this information."

70. Neither BMD nor Rice Lake West identified any specific documentation or information that was supposedly lacking.

71. On February 19, 2024, BMD stated further, "You provided no backup information for the days requested and no backup information for the additional costs."

72. In fact, as of February 19, 2024, Muth had provided backup information for the days requested.

73. In fact, as of February 19, 2024, Muth had provided backup information for the additional costs requested.

74. On February 21, 2024, Rice Lake West requested that BMD provide a list of items that BMD felt were missing.

75. BMD did not provide a list or otherwise offer any clarification.

76. BMD sent the City's final denial of the December 2023 PCO on February 26, 2024.

77. The City denied the December 2023 PCO claiming that it had "not been appropriately documented and thus, no further payment is due and owing."

78. In fact, Muth and Rice Lake West had provided substantial and thorough supporting documentation, including cost breakdowns, invoices, and other related documents.

79. Neither the City nor BMD, acting through Rice Lake West, offered a reasonable explanation of how the December 2023 PCO had supposedly "not been appropriately documented."

80. The City and BMD, acting through Rice Lake West, again insisted that Muth should accept the City's Proposal, again without providing any reasonable contractual or factual basis.

81. The City and BMD, acting through Rice Lake West, did not review or reject the December 2023 PCO in good faith.

82. Under the Contract Documents, BMD was required to render decisions about proposed change orders impartially.

9

83. BMD, acting through Rice Lake West, did not review or reject the December 2023 PCO impartially.

84. On March 20, 2024, Muth submitted to Rice Lake West a formal claim under Article 12 of the Contract Documents, requesting $746,952 and 370 calendar days ("Muth's Claim").

85. Muth's Claim included pricing for the work placed in 2022 and 2023, and a deduction for the value of work removed from Muth's original scope of work.

86. Muth has fulfilled all conditions precedent under the Subcontract to obtain the relief requested in Muth's Claim.

87. To date, the City and BMD, acting through Rice Lake West, have not responded to Muth's Claim.

88. To date, the City and BMD, acting through Rice Lake West, have not addressed Muth's Claim in good faith.

89. To date, Rice Lake West has not paid Muth the amount stated in Muth's Claim.

90. Muth has fulfilled all conditions precedent under the Subcontract to receive payment of the outstanding Subcontract balance.

91. To date, Rice Lake West has not paid Muth the outstanding Subcontract balance.

92. In September 2024, Muth (through counsel) sent a notice of bond claim to FIC, based upon Rice Lake West's failure to pay Muth the outstanding Subcontract balance, including the amount stated in Muth's Claim, other invoices for undisputed Subcontract Work, retainage, and other change order work.

93. Muth subsequently submitted an amended notice of bond claim to FIC (the "Amended Bond Claim").

94. The Amended Bond Claim totals $2,008,231.93.

95. To date, Rice Lake West has not paid Muth any portion of the amounts stated in the Amended Bond Claim.

96. The Amended Bond Claim is Muth's claim against the Bond under S.D. Codified Laws, Chapter 5–21.

97. To date, FIC has not issued a denial of the Amended Bond Claim.

98. To date, FIC has not paid any portion of the amounts due to Muth under the Amended Bond Claim.

**FIRST CLAIM FOR RELIEF: BREACH OF CONTRACT**
**(AGAINST RICE LAKE WEST)**

99. Muth realleges and incorporates by reference all preceding allegations in this Complaint.

100. The Subcontract is a valid, binding, and enforceable agreement.

101. Muth properly and timely performed its obligations under the Subcontract.

102. The Subcontract incorporates by reference the Prime Contract and the other Contract Documents.

103. Under the Contract Documents, if the owner, engineer, or anyone for whom the owner is responsible delays the performance of the work, then the contractor shall be entitled to an equitable adjustment of the contract time and contract price.

104. BMD represented the City and was responsible for the design of the Project.

105. BMD's original design of the Project's duct bank system was incomplete, defective, and would not have produced a fully functional facility.

106. Changes to BMD's original design of the Project's duct bank system were necessary to produce a fully functional facility.

107. Changes to BMD's original design of the Project's duct bank system required Muth to perform the Extra Work.

108. Over the two years following the discovery of the Duct Bank Design Error, Muth was delayed month after month while the City and BMD, acting through Rice Lake West, gathered information and reviewed design revisions and approvals.

109. The City and BMD, acting through Rice Lake West, compounded Project delays by refusing to approve design changes, to accept proposed change orders, or to provide clear and effective direction in a timely manner.

110. Muth spent substantial unplanned and additional time performing the Extra Work.

111. Muth was required to perform and complete the Extra Work to produce a fully functional facility.

112. The Extra Work increased the cost and time needed to finish the Project.

113. The Extra Work delayed the Project's schedule.

114. The Extra Work pushed the Project well beyond the original completion date.

115. The factors causing the delays and necessitating the Extra Work were beyond Muth's control.

116. Muth is entitled to an equitable adjustment of the contract time and contract price.

117. Muth performed and completed the Extra Work and Muth's remaining original scope of Subcontract Work.

118. Every contract contains an implied covenant of good faith and fair dealing, which prohibits parties from preventing or injuring another party's right to receive the benefits of the contract.

119. The City and BMD, acting through Rice Lake West, did not review the January 2023 PCO in good faith.

120. The City and BMD, acting through Rice Lake West, did not review the December 2023 PCO in good faith.

121. The City and BMD, acting through Rice Lake West, did not review the documents Muth submitted in support of the December 2023 PCO in good faith.

122. The City and BMD, acting through Rice Lake West, did not review Muth's Claim in good faith.

123. Rice Lake West has violated the South Dakota Prompt Payment Act under S.D. Codified Laws § 5–26 by unlawfully withholding payment from Muth.

124. The City paid Rice Lake West for work through May 31, 2024, which covered at least $632,685.17 of Muth's work.

125. Rice Lake West was required under S.D. Codified Laws § 5–26–6 to pay Muth the $632,685.17 within thirty days after receiving payment from the City.

126. Within thirty days after receiving payment from the City for Muth's work, Rice Lake West did not disclose to Muth that it had received payment from the City for Muth's work, did not pay Muth for that work, and did not identify any back-charges, deductions, or disputes to justify its failure to pay Muth.

127. To date, Rice Lake West has refused to pay Muth the undisputed sum of $632,685.17, covering Subcontract Work completed by Muth for which the City has paid Rice Lake West.

128. Rice Lake West is aware that Muth did not cause the delays in completing the Subcontract Work and the Extra Work.

129. Rice Lake West is aware that the factors causing the delays and necessitating the Extra Work were beyond Muth's control.

130. Rice Lake West is aware that Muth spent substantial unplanned time performing the Extra Work, which was necessary to produce a fully functional facility.

131. Rice Lake West is aware that the City and BMD, acting through Rice Lake West, compounded Project delays by refusing to approve design changes, to accept proposed change orders, or to provide clear and effective direction in a timely manner.

132. Interest on any payments Rice Lake West has accepted for Muth's work but not paid to Muth continues to accrue under S.D. Codified Laws §§ 5–26–6 and 54–3–16.

133. Rice Lake West breached the Subcontract by failing to perform its obligations under the express and implied terms of the Subcontract, including but not limited to failing to pay Muth for the Extra Work, for undisputed Subcontract Work, or in a timely manner as required by S.D. Codified Laws § 5–26–6.

134. Rice Lake West breached the implied covenant of good faith and fair dealing by implementing unreasonable decisions and delays by the City and BMD, which routinely lacked any good faith basis, and by relying on those decisions and delays to wrongfully withhold payment from Muth despite having received payment from the City for Muth's work.

135. As a result of Rice Lake West's multiple breaches of the Subcontract, Muth has been damaged in an amount presently estimated to total $2,008,231.93, the exact amount to be determined at trial.

### SECOND CLAIM FOR RELIEF: UNJUST ENRICHMENT
### (AGAINST RICE LAKE WEST)

136. Muth realleges and incorporates by reference all preceding allegations in this Complaint.

137. Rice Lake West received a benefit from Muth by accepting the Subcontract Work and Extra Work.

138. The Extra Work included in Muth's Claim and the Amended Bond Claim was necessary to complete the Project.

139. The Extra Work included in Muth's Claim and the Amended Bond Claim was above and beyond the original scope of the Subcontract Work.

140. Rice Lake West was aware that it was receiving a benefit from Muth by accepting the Subcontract Work and Extra Work.

141. It would be inequitable to allow Rice Lake West to retain the benefit of Muth's performance without paying Muth for it.

142. As a result of Rice Lake West's unjust enrichment, Muth has been damaged in an amount presently estimated to total $2,008,231.93, the exact amount to be determined at trial.

### THIRD CLAIM FOR RELIEF: PAYMENT BOND CLAIM UNDER S.D.C.L § 5–21–6
### (AGAINST RICE LAKE WEST AND FIC)

143. Muth realleges and incorporates by reference all preceding allegations in this Complaint.

144. This claim is brought under S.D. Codified Laws § 5–21–6 in the name of the City of Pierre, by and through Muth, against Rice Lake West and its surety, FIC.

145. S.D. Codified Laws § 5–21–6 requires bond claimants to wait to bring suit until "six months after the complete performance of such contract and final settlement thereof[.]"

146. Upon information and belief, the Prime Contract has not reached final settlement, apparently due to the outstanding claims that are the subject matter of this action.

147. The current version of S.D. Codified Laws § 5–21–6 fails to expressly account for situations like the Amended Bond Claim and the City's refusal to address Muth's Claim.

15

148. The "final settlement" of the Prime Contract appears to have no reasonable likelihood of occurring without bringing this action.

149. To the extent not expressly contemplated by S.D. Codified Laws § 5–21–6, bringing this action now, instead of waiting a potentially indefinite period of time for the "final settlement" of the Prime Contract, is warranted by a non-frivolous argument for the extension of existing law.

150. Bringing this action now is warranted to allow for a remedy because the Prime Contract might otherwise remain indefinitely unsettled.

151. Muth has satisfied all conditions precedent to recover payment of the amount stated in the Amended Bond Claim.

152. Muth is contractually entitled to payment of the amount stated in the Amended Bond Claim.

153. To date, Rice Lake West and FIC have failed to pay Muth the amount stated in the Amended Bond Claim.

154. Muth is entitled to recover from Rice Lake West and FIC an amount presently estimated to total $2,008,231.93, the exact amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Muth Electric, Inc. respectfully requests that this Court enter a judgment against Defendants Rice Lake West, Inc. (f/k/a Stanek Constructors, Inc.) and Federal Insurance Company, by respectfully requesting that the Court:

1. Enter judgment in favor of the Plaintiff Muth Electric, Inc. on each and every cause of action;

2. Award Plaintiff Muth Electric, Inc. the requested equitable relief and damages in excess of the jurisdictional amount set forth in U.S.C. § 1332(a), presently estimated to total $2,008,231.93, the exact amount to be determined at trial;

3. Award Plaintiff Muth Electric, Inc. interest under S.D. Codified Laws §§ 5–26–6 and 54–3–16;

4. Award Plaintiff Muth Electric, Inc. all available costs, disbursements, interest, and attorney's fees; and

5. Award Plaintiff Muth Electric, Inc. all other relief as the Court deems just and equitable.

**DEMAND FOR TRIAL BY JURY**

Plaintiff Muth Electric, Inc. demands a trial by jury on all issues that are so triable.

WELLE LAW P.C.

Dated: November 15, 2024

Joshua I. Welle
8011 34th Avenue South, Suite 415
Bloomington, MN 55425
T: (612) 656-9019
F: (612) 656-3019
josh@wellelaw.com
ATTORNEY FOR PLAINTIFF
MUTH ELECTRIC, INC.

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Muth Electric, Inc.

### DEFENDANTS
Rice Lake West, Inc., f/k/a Stanek Constructors, Inc., and Federal Insurance Company

**(b)** County of Residence of First Listed Plaintiff: Davison
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: ____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Welle Law P.C., 8011 34th Ave. S, Ste. 415
Bloomington, MN 55425, (612) 656-9019, Joshua I. Welle

Attorneys *(If Known)*
Fabyanske, Westra, Hart, & Thomson P.A., 80 S 8th St.,
Ste. 1900, Minneapolis, MN 55402, Nathan R. Sellers

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [x] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander |  | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability |  | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine |  | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability / **PERSONAL PROPERTY** |  | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act |  | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [x] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise |  | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee |  | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence |  | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General |  | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application |  | [ ] 950 Constitutionality of State Statutes |
|  | [ ] 448 Education / [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions |  |  |
|  | [ ] 555 Prison Condition |  |  |  |
|  | [ ] 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332

Brief description of cause:
Breach of Contract, Unjust Enrichment, Payment Bond Claim

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** $2,008,231.93

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE: ____
DOCKET NUMBER: ____

DATE: November 15, 2024
SIGNATURE OF ATTORNEY OF RECORD: *Joshua I. Welle*

**FOR OFFICE USE ONLY**
RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____