UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MUTH ELECTRIC, INC, | 4:24-CV-04214-RAL |
| Plaintiff, | |
| vs. | OPINION AND ORDER DENYING FOURTH-PARTY DEFENDANT BURNS & MCDONNELL'S MOTIONS TO DISMISS |
| RICE LAKE WEST, INC., FEDERAL INSURANCE COMPANY, | |
| Defendants, | |
| vs. | |
| RICE LAKE WEST, INC. f/k/a STANEK CONSTRUCTORS, INC., | |
| Third-Party Plaintiff, | |
| vs. | |
| CITY OF PIERRE, SOUTH DAKOTA, | |
| Third-Party Defendant and Fourth-Party Plaintiff, | |
| vs. | |
| BURNS & MCDONNELL ENGINEERING COMPANY, INC., | |
| Fourth-Party Defendant. | |

Plaintiff Muth Electric, Inc. (Muth) filed a Complaint against Rice Lake West, Inc., f/k/a Stanek Constructors, Inc. (Rice Lake West), and Federal Insurance Company (FIC) asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and alleging breach of contract and unjust enrichment claims against Rice Lake West and a payment bond claim under S.D.C.L. § 5–21–6 against Rice Lake West and FIC. Doc. 1. Rice Lake West answered, counterclaimed, and filed a Third-Party Complaint against City of Pierre, South Dakota (Pierre) alleging a third-party liability claim pursuant to Federal Rule of Civil Procedure 14 as well as breach of the implied warranty of design adequacy, breach of contract, and unjust enrichment/quantum merit/restitution claims and requesting declaratory judgments. Docs. 7, 22, 25. Third-Party Defendant Pierre answered and filed a Fourth-Party Complaint against Burns & McDonnell Engineering Company (Burns & McDonnell) alleging that should Pierre be liable to Rice Lake West, Pierre is entitled to indemnification from Burns & McDonnell for some or all damages which may be adjudged, and requesting in the alternative, if Pierre is adjudged to be at fault to any degree, for this Court to determine the relative degrees of fault of each party. Doc. 17. Pierre also filed Counterclaims against Rice Lake West alleging breach of contract and negligence. Doc. 16.

On June 30, 2025, Muth amended its Complaint and added claims against Fourth-Party Defendant Burns & McDonnell. Doc. 40. With its Answer to the Amended Complaint, Rice Lake West filed an Amended Third-Party Complaint against Pierre, an Amended Counterclaim against Muth, and Crossclaims against Fourth-Party Defendant Burns & McDonnell invoking diversity jurisdiction under 28 U.S.C. § 1332 and supplemental jurisdiction under 28 U.S.C. § 1367. Doc. 48. Fourth-Party Defendant Burns & McDonnell now moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Muth's claim against it, Doc. 40, as well as the two claims asserted

by Rice Lake West against it, Doc. 48. Docs. 45, 53. For the reasons explained below, the motions to dismiss are denied.

## I.    Factual Allegations[1]

This lawsuit arises out of issues concerning a construction project for the City of Pierre. Doc. 40 ¶ 13. In 2021, Pierre solicited bids for a project to improve its existing wastewater treatment plant. Id. Burns & McDonnell was Pierre's "engineer and authorized representative for the Project," and it "developed the design for the Project, including preparing the plans, specifications, notice and call for bid, instructions to bidders, general conditions, agreement between owner and contractor, and other contract documents (collectively, the 'Contract Documents')." Id. ¶¶ 14–15. Muth alleges that Burns & McDonnell "did not complete an adequate site investigation of existing conditions prior to finalizing the Contract Documents." Id. ¶ 16.

On April 20, 2021, Rice Lake West submitted its bid for the prime contract for the Project, Pierre accepted its bid, and Rice Lake West and Pierre executed the prime contract. Id. ¶¶ 17–19. FIC then issued a bond assuring Rice Lake West's performance and payment bond of the Project. Id. ¶ 20. On May 24, 2021, Rice Lake West and Muth executed a subcontract[2] for the Project. Id. ¶ 21. Muth's original scope of work included "Division 26 (complete), Division 40 (complete), Division 22 (connections only), Division 23 (connections only), and installing vendor control panels shipped loose with specified equipment, including electrical connections to vendor-

---

[1] This Court makes no factual findings in ruling on a motion to dismiss but draws the factual allegations relevant to the pending motions from the Amended Complaint, Doc. 40, and Amended Third-Party Complaint and Crossclaim, Doc. 48, as well as documents necessarily embraced by those pleadings.

[2] "The Subcontract incorporated by reference the Prime Contract, including any Contract Documents incorporated therein, to the extent the Prime Contract and Contract Documents apply to the Subcontract Work." Doc. 40 ¶ 24.

supplied equipment." Id. ¶ 23.  Under the terms of the subcontract, "Muth was required . . . to furnish, deliver, and install all labor and material necessary to complete the Subcontract Work in accordance with the plans and specifications in the Contract Documents prepared by" Burns & McDonnell. Id. ¶ 25.

Around the end of July 2021, Muth discovered there was an error in the plans and specifications within the Contract Documents prepared by Burns & McDonnell. Id. ¶ 26. The original duct bank design "was incomplete, defective, and would not have produced a fully functional facility" as it contained "incorrect quantities of conduits in the existing and planned duct banks, incorrect sizes of conduits in the existing and planned duct banks, duct banks depicted in the plans and specifications that did not actually exist, and routing of existing duct banks inconsistently with the plans and specifications." Id. ¶¶ 26–27. These errors "constituted a physical condition at the Project site that differed materially from that shown and indicated in the Contract Documents." Id. ¶ 28. After Muth completed a walk-through of the Project site with Burns & McDonnell personnel on or around August 6, 2021, Pierre and Burns & McDonnell, "acting through Rice Lake West, directed Muth to stop work on the Project while they reviewed the Duct Bank Design Error." Id. ¶¶ 31–32.

The discovery of what Muth calls the "Duct Bank Design Error" required substantial extra work for Muth "outside the original scope of [Muth's] Subcontract and required additional time outside of the original scope of the Subcontract," all of which was necessary to complete the Project. Id. ¶¶ 33–37. The delays resulting from the design error were compounded by Pierre and Burns & McDonnell, "acting through Rice Lake West, . . . refusing to approve design changes, to accept proposed change orders, or to provide clear and effective direction in a timely manner." Id.

4

¶ 38. Muth alleges that Pierre and Burns & McDonnell did not address the Duct Bank Design Error in a timely manner or in good faith. Id. ¶¶ 39–40.

Muth then proceeded with construction and performed extra work "[i]n an effort to maintain the Project's schedule and to mitigate delays on the Project . . . by following [Burns & McDonnell's] limited direction." Id. ¶ 44. On or around June 29, 2022, Pierre and Burns & McDonnell, "acting through Rice Lake West, directed Muth to stop work again." Id. ¶ 45. Following this second pause on Muth's work, "Muth, Rice Lake West, and [Burns & McDonnell] exchanged further information about the Duct Bank Design Error and potential design changes" during the summer and fall of 2022. Id. ¶ 46. Muth alleges that Pierre and Burns & McDonnell, "acting through Rice Lake West, continued to compound Project delays by continuing to refuse to approve design changes, to accept proposed change orders, or to provide clear and effective direction in a timely manner." Id. ¶ 47. Muth alleges that Rice Lake West also contributed to the Project delays. Id. ¶ 48. On November 4, 2022, Rice Lake West notified Muth of its intention to bill Muth for the liquidated damages charged by Pierre, and Muth objected in response that the delays were beyond their control. Id. ¶¶ 48–49.

Muth submitted two proposed change orders (PCO) for the additional cost and time needed to complete the extra work, one in January 2023 and one in December 2023. Id. ¶¶ 51, 61. Pierre, acting through Rice Lake West, rejected the January 2023 PCO and "offered to pay a considerably lower lump sum with no allowance for winter time and materials and zero contract days for the Extra Work." Id. ¶¶ 52–53. Muth alleges that neither Pierre nor Burns & McDonnell, acting through Rice Lake West, offered any good reason to accept anything other than full compensation of the extra work or to accept the assessment of liquidates damages for delays caused by the design error and other parties' actions. Id. ¶¶ 55–56. Muth further alleges that Pierre and Burns &

McDonnell, "acting through Rice Lake West, did not review of reject the January 2023 PCO in good faith." Id. ¶ 58. Muth eventually substantially completed the subcontract work, including the extra work resulting from the design error, on or around November 16, 2023. Id. ¶ 59. The extra work increased Muth's costs and time needed to complete the work required under the subcontract. Id. ¶ 60.

Muth's second PCO, submitted in December 2023, sought $746,952 and 370 calendar days be added to the subcontract, and included supporting documentation. Id. ¶¶ 61–64. The December 2023 PCO also "included pricing for the work placed in 2022 and 2023, and a deduction for the value of work removed from Muth's original scope of work." Id. ¶ 62. On January 4, 2024, Burns & McDonnell, acting through Rice Lake West, rejected the December 2023 PCO. Id. ¶ 65. Burns & McDonnell stated that the PCO did not have adequate documentation for it to review, but it did not identify what documentation it needed. Id. ¶¶ 65–66.

Muth responded with additional documentation and information on January 9, 2024. Id. ¶¶ 67–69. After Rice Lake West forwarded the materials to Burns & McDonnell, Burns & McDonnell responded, "[p]er our previous correspondence you were to gather the adequate information" but then wrote, "the documents you provided do not have this information" without identifying the documents or underlying information that Muth had failed to provide. Id. ¶¶ 71–73. Burns & McDonnell stated a few days later that Muth had "provided no backup information for the days requested and no backup information for the additional costs," but Muth alleges that it had provided both kinds of requested information as of that response. Id. ¶¶ 74–76. Specifically, Muth alleges that both it and Rice Lake West had provided "substantial and thorough supporting documentation, including cost breakdowns, invoices, and other related documents." Id. ¶ 81. Rice Lake West requested that Burns & McDonnell provide a list of items it felt were missing, but

Burns & McDonnell did not provide a list or otherwise clarify its request, and on February 26, 2026, Burns & McDonnell sent Pierre's final denial of the December 2023 PCO "claiming that it had 'not been appropriately documented and thus, no further payment is due and owing.'" Id. ¶¶ 77–81. Muth alleges that Pierre and Burns & McDonnell again "insisted that Muth accept" the lower lump sum that Pierre had offered earlier in 2023 in response to its January 2023 PCO. Id. ¶ 83. Muth alleges that Pierre and Burns & McDonnell "did not review or reject the December 2023 PCO in good faith." Id. ¶ 84.

"On March 20, 2024, Muth submitted to Rice Lake West a formal claim under Article 12 of the Contract Documents, requesting $746,952 and 370 calendar days," which included the pricing for Muth's 2022 and 2023 work and deducted the value of work removed from Muth's original scope of work. Id. ¶¶ 87–88. Muth alleges it "has fulfilled all conditions precedent under the Subcontract to obtain the relief requested in" its claim as well as "all conditions precedent under the Subcontract to receive payment of the outstanding Subcontract balance." Id. ¶¶ 89, 93. However, Muth alleges that to date, Pierre and Burns & McDonnell, acting through Rice Lake West, have not addressed the claim in good faith or responded. Id. ¶¶ 90–91. In addition, Muth alleges Rice Lake West has not paid Muth the amount claimed or the outstanding Subcontract balance. Id. ¶¶ 92, 94.

Muth subsequently submitted a notice of bond claim to FIC as well as a later amended notice of bond claim "based upon Rice Lake West's failure to pay Muth the outstanding Subcontract balance, including the amount stated in Muth's Claim, other invoices for undisputed Subcontract Work, retainage, and other change order work." Id. ¶¶ 95–96. "The Amended Bond Claims totals $ 2,008,231.93." Id. ¶ 97. As of the time of the Amended Complaint, Muth alleges that Rice Lake West "has not paid Muth any portion of the amounts stated in the Amended Bond

7

Claim," "FIC has not issued a denial of the Amended Bond Claim," and "FIC has not paid any portion of the amounts due to Muth under the Amended Bond Claim." Id. ¶¶ 98–101.

In its Amended Third-Party Complaint and Crossclaim, Rice Lake West incorporates Muth's Amended Complaint by reference. Doc. 48 ¶ 8. In addition to the allegations in Muth's Amended Complaint, as relevant to Burns & McDonnell's Motions to Dismiss, Rice Lake West alleges that it submitted its bid for the Project "[i]n accordance with the Project Manual," which was prepared and finalized by Burns & McDonnell. Id. ¶¶ 18–20. Rice Lake West alleges that by making the Project Manual available, it promised, warranted, and represented that the plans were "fit and suitable for their intended purpose," "complete and accurate," and "would produce a fully functional wastewater treatment facility" as well as that the work "could be performed using ordinary, economically practicable, and customary construction, means, methods, and techniques in the time allocated in the Project Manual." Id. ¶ 25.

Rice Lake West alleges that Pierre and Burns & McDonnell "misrepresented material facts in the Project Manual through concealment and false statements" and "repeatedly breached the agreements." Id. ¶¶ 41–42. Rice Lake West asserts that Pierre and Burns & McDonnell "unreasonably and without justification failed to approve or improperly rejected" PCOs, "failed to respond to Claims," and "failed and refused to grant or approve appropriate adjustments to the Contract Times and Contract Price." Id. ¶¶ 45–47. Rice Lake West asserts that it and its subcontractors completed work beyond the scope of the contracts "[a]t the direction of and with the authorization, knowledge, and acquiescence of" Pierre and Burns & McDonnell. Id. ¶¶ 50.

In its Motions to Dismiss, Burns & McDonnell provides relevant contract language, which this Court finds as necessarily embraced by the both the Amended Complaint and Crossclaim. See Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017). In its subcontract, Muth agreed

8

to be bound by all of the terms of the general contract between Pierre and Rice Lake West. Doc. 45 at 8 (citing Doc. 45-1). The Agreement for Construction includes "ducts" in its definition of "underground facilities," as well as the following provision on the contractor's responsibilities:

> Contractor's Responsibilities: The information and data shown or indicated in the Contract Documents with respect to existing Underground Facilities at or adjacent to the Site is based on information and data furnished to Owner or Engineer by the owners of such Underground Facilities, including Owner, or by others. Unless it is otherwise expressly provided in the Supplementary Conditions:
>
> 1. Owner and Engineer do not warrant or guarantee the accuracy or completeness of any such information or data provided by others; and
>
> 2. the cost of all of the following will be included in the Contract Price, and Contractor shall have full responsibility for:
>    a. reviewing and checking all information and data regarding existing Underground Facilities at the Site;
>    b. locating all Underground Facilities shown or indicated in the Contract Documents as being at the Site....

Id. at 9 (citing Doc. 45-2). Within the Bid Form, submitted by Rice Lake West, Rice Lake West "acknowledges that Owner and Engineer do not assume responsibility for the accuracy or completeness of information and data shown or indicated in the Bid Documents with respect to Underground Facilities." Id. (citing Doc. 45-3). Finally, the General Contract between Pierre and Rice Lake West includes the following provision concerning the limitations on Burns & McDonnell's Authority and Responsibilities:

> Neither Engineer's authority or responsibility under this Article 10 or under any other provision of the Contract, nor any decision made by Engineer in good faith either to exercise or not exercise such authority or responsibility or the undertaking, exercise, or performance of any authority or responsibility by Engineer, shall create, impose, or give rise to any duty in contract, tort, or otherwise owed by Engineer to Contractor, any Subcontractor, any Supplier, any other individual or entity, or to any surety for or employee or agent of any of them.

Id. at 10 (citing Doc. 45-2).

Muth alleges one claim against Burns & McDonnell in its Amended Complaint, Doc. 40 at 17, that Burns & McDonnell was professionally negligent "in developing the design for the Project and [failing] to interpret and administer the Contract Documents during the construction phase of the Project in good faith," which "created additional work" for Muth, and seeks damages presently estimated to total $2,008,231.93. Id. ¶¶ 180–82. In its Motion to Dismiss Muth's professional negligence claim, Burns & McDonnell argues that (1) it did not owe a duty to Muth and (2) Muth has failed to plead sufficient facts to make out a claim for negligence based on a failure to administer the General Contract. Doc. 45.

Rice Lake West alleges two claims against Burns & McDonnell, one for professional negligence and one for contribution and indemnity. Doc. 48 at 48–49. Rice Lake West seeks damages and, if Rice Lake West is adjudged liable in any manner to any other party, a declaratory judgment that Rice Lake West is entitled to contribution or indemnity as well as a determination of liability amongst the parties. Id. at 51–52. In its Motion to Dismiss, Burns & McDonnell argues that (1) it did not owe a duty to Rice Lake West, (2) Rice Lake West has failed to plead sufficient facts to make out a claim for negligence based on a failure to administer the General Contract, and (3) Rice Lake West's claim for contribution or indemnity fails as a matter of law. Doc. 53.

## II.    Standard of Review

On a motion to dismiss under Rule 12(b)(6), courts must accept a plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must

10

plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (alteration in original) (citation and internal marks omitted).

"Though 'matters outside the pleadings' may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." Zean, 858 F.3d at 526 (quoting Enervations, Inc. v. Minn. Min. & Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004)). For example, "[i]n a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss . . . even if contract documents not attached to the complaint refute a breach-of-contract claim, or a claim that defendant breached a statutory or common law duty." Id. (quoting Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003)) (collecting cases).

### III.    Choice of Law

This Court's jurisdiction over the claims in this case derives from diversity of citizenship under 28 U.S.C. § 1332 and supplemental jurisdiction under 28 U.S.C. § 1367. Doc. 40 at 2; Doc. 48 at 36. "It is a long-recognized principle that federal courts sitting in diversity 'apply state substantive law and federal procedural law.'" Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 417 (2010) (Stevens, J., concurring) (quoting Hanna v. Plumer, 380 U.S.

460, 465 (1965)). In this diversity jurisdiction action, no party contests that South Dakota substantive law governs. See Docs. 45, 51, 53, 58. Therefore, this Court will apply South Dakota substantive law. See Neth. Ins. Co. v. Main St. Ingredients, LLC, 745 F.3d 909, 913 (8th Cir. 2014).

## IV.    Professional Negligence Counts

### A.  South Dakota Law Applicable to Claims Against Burns & McDonnell

Muth and Rice Lake West both allege a state law claim of professional negligence against Fourth-Party Defendant Burns & McDonnell. Doc. 40 at 17–20; Doc. 48 at 48–49. Burns & McDonnell moves to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6) by arguing that (1) they fail as a matter of law because Burns & McDonnell did not owe a duty to Muth or Rice Lake West under these circumstances; and (2) Muth and Rice Lake West have both failed to plead a plausible claim for negligence based on a failure to administer a general contract. Doc. 45 at 13–22; Doc. 53 at 15–25.

When applying the substantive law of a state, this Court must follow decisions of the state's supreme court interpreting the forum's law. See Brill as Tr. for Brill v. Mid-Century Ins. Co., 965 F.3d 656, 659 (8th Cir. 2020). Under South Dakota law, to prevail in a tort action based on professional negligence, "a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury." Johnson v. Hayman & Assocs., Inc., 867 N.W.2d 698, 702 (S.D. 2015) (quoting Hendrix v. Schulte, 736 N.W.2d 845, 847 (S.D. 2007)); see also Muhlenkort v. Union Cnty. Land Tr., 530 N.W.2d 658, 662 (S.D. 1995). "Professional negligence claims are typically asserted against professionals such as physicians, accountants, and attorneys," but "the only difference between negligence and professional negligence is the nature of the duty." Total Auctions & Real Est., LLC v. S.D. Dep't of Revenue & Regul., 888 N.W.2d 577, 582 n.6, 582

(S.D. 2016). <u>See also</u> <u>S.D. Bd. of Regents ex rel. Black Hills State Univ. v. Glob. Synthetics Env't,</u>

<u>LLC</u>, 270 F. Supp. 3d 1088, 1110 (D.S.D. 2017) (citing <u>Lien v. McGladrey & Pullen</u>, 509 N.W.2d

421, 423 (S.D. 1993)) ("Engineers and architects are generally considered subject to claims of

professional negligence.").

      The existence of the duty in the first place is a question of law.  <u>Trammell v. Prairie States</u>

<u>Ins. Co.</u>, 473 N.W.2d 460, 462 (S.D. 1991).  "A duty can arise under statute or common law."

<u>Cole v. Wellmark of S.D., Inc.</u>, 776 N.W.2d 240, 250 (S.D. 2009).  A person or entity "provid[ing]

professional services has a duty to the person from whom the services are performed to use such

skill and care ordinarily exercised by others in the same profession."  <u>Kreisers Inc. v. First Dakota</u>

<u>Title Ltd. P'ship</u>, 852 N.W.2d 413, 420 (S.D. 2014) (cleaned up and citation omitted).  In the

professional negligence context, "[t]o establish a duty on the part of the defendant, it must be

foreseeable that a party would be injured by the defendant's failure to discharge that duty."

<u>Muhlenkort</u>, 530 N.W.2d at 662 (citing <u>Mid-Western Elec., Inc. v. DeWild Grant Reckert &</u>

<u>Assocs. Co.</u>, 500 N.W.2d 250, 254 (S.D. 1993)).  "Reliance is helpful in analyzing foreseeability

and, thus, duty, but it is not an element of a professional negligence claim."  <u>Johnson</u>, 867 N.W.2d

at 705.

      "[U]nder South Dakota law, an engineer can owe a duty to a contractor despite the lack of

contractual privity between the parties."  <u>Domson, Inc. v. Kadrmas Lee & Jackson, Inc.</u>, 918

N.W.2d 396, 401 (S.D. 2018) (citing <u>Mid-Western Elec., Inc.</u>, 500 N.W.2d at 253–54).  "If a

contractor or subcontractor is expected to use an engineering firm's report to complete a project,

it is foreseeable that the contractor or subcontractor could be harmed by the firm's professional

negligence."  <u>S.D. Bd. of Regents</u>, 270 F. Supp. 3d at 1111 (citing <u>Mid-Western Electric</u>, 500

N.W.2d at 254).  For example, "an engineering firm could owe a duty to reasonably draft and

interpret the project specifications and [] it is foreseeable that a contractor, bound to follow the specifications prepared by the engineering firm, could be harmed by the firm's negligence in drafting and interpreting the specifications." Domson, Inc., 918 N.W.2d at 405 (citing Mid-Western Elec., Inc., 500 N.W.2d at 254 (quoting Waldor Pump & Equip. v. Orr-Schelen-Mayeron & Assocs., 386 N.W.2d 375, 377 (Minn. Ct. App. 1986))).

The Supreme Court of South Dakota has discussed the interplay of tort claims for professional negligence with contract claims. "Tort liability requires a breach of a legal duty independent of contract." Kreisers Inc., 852 N.W.2d at 419 (internal quotation and citation omitted) ("This independent legal duty must arise from extraneous circumstances, not constituting elements of the contract." (cleaned up and citation omitted)). An underlying claim only concerning a breach of contract issue "will not afford grounds for a tort action by third parties and is limited under a breach of contract cause of action." Id. However, "[l]iability in tort for breach of" a professional's duty to the plaintiff to "may arise as a result of negligence during the performance of the contract, even if there has been no breach of contract." Id. at 420 (alteration in original). In addition, "[i]f the relationship of the parties is such as to support a cause of action in tort, that cause of action is not to be denied because the parties happened also to have made a contract." Fisher Sand & Gravel Co. v. State ex rel. S.D. Dep't of Transp., 558 N.W.2d 864, 869 (S.D. 1997) (citation omitted).

Yet, while a duty between an engineer and a contractor "may exist under Mid-Western Electric,"[3] an existing contract can insulate an engineer "from liability for their good-faith acts and failures to act by the authority given to them under the contract and contract documents" (provided

---

[3] In Domson, Inc., the parties did not dispute that the engineering firm owed the contractor a duty. 918 N.W.2d at 406.

the contractual provision does not violate public policy). <u>Domson, Inc.</u>, 918 N.W.2d at 401, 403; see also <u>id.</u> at 402 ("Although SDCL 20-9-1 mandates responsibility for injury caused by willful acts or want of ordinary care or skill, nothing in this statute prohibits one party from agreeing by contract to release a third party from liability for ordinary negligence." (citing <u>Lee v. Beauchene</u>, 337 N.W.2d 827, 829 (S.D. 1983))). In <u>Domson, Inc.</u>, the Oglala Sioux Tribe hired an engineering firm for the design of its upcoming project, and the subsequent contract between the Oglala Sioux Tribe and its contractor insulated the engineering firm as "a third party from claims of negligent design and negligent administration and interpretation of a contract." <u>Id.</u> at 398–99.[4] This third-party exculpatory paragraph gave rise to an affirmative defense to the negligent administration and interpretation of a contract claim where "the party asserting the affirmative defense must establish the prima facie case of good faith." <u>Id.</u> at 403, 405 (citation omitted). Once the defendant had established the prima facie case of this good faith affirmative defense, the burden of production shifted to the plaintiff. <u>Id.</u> at 403–04. The Supreme Court of South Dakota defined "good faith" in this context as "honesty in fact concerning conduct or a transaction, and good faith is distinguished from mere negligence or an honest mistake." <u>Id.</u> at 404 (cleaned up and citation omitted).

However, in <u>Domson, Inc.</u>, the exculpatory clause was not a defense to the contractor's negligent design claim against the engineering firm because the engineering firm had "designed and drafted the plans and specifications" before the execution of the contract. <u>Id.</u> at 405. Therefore, in designing and drafting the plans, the engineering firm "could not have been exercising authority or responsibility under Article 9 or under other provisions of the contract

---

[4] The language used in the <u>Domson, Inc.</u> contract in the exculpatory clause parallels the language used by the parties in the exculpatory clause in this case. <u>Compare</u> <u>Domson, Inc.</u>, 918 N.W.2d at 399–400 <u>with</u> Doc. 53-2 ¶ 10.08.A.

documents" between the Oglala Sioux Tribe and the contractor. Id. See also City of Sioux Falls v. Azzuro, Inc., No. 4:22-CV-04052, 2025 WL 2109669, at *31 (D.S.D. July 28, 2025) (barring a claim under the economic loss doctrine where the plaintiff's expert had not contended that the defendant had "breached a duty of professional care independent of the Contract as is generally required in a professional negligence claim under South Dakota law"); Kreisers Inc., 852 N.W.2d at 420 ("First Dakota owed a duty of care to Kreisers beyond the contract between the two parties . . . because an independent duty to exercise reasonable care arose from extraneous circumstances not constituting the elements of the contract."). [5]

## B. The Contractors' Claims of a Duty Owed by Burns & McDonnell

Muth alleges that Burns & McDonnell "provided professional engineering services" to Pierre, and that Burns & McDonnell "owed a duty to Muth to provide professional engineering services" and "to develop the design for the Project consistent with the applicable industry standard of care." Doc. 40 ¶¶ 159, 161–62. Muth further alleges that "[t]he applicable industry standard of care required [Burns & McDonnell] to complete an adequate site investigation of existing conditions to develop an appropriate design prior to finalizing the Contract Documents," "to provide a design without material defects," and "to provide a constructible design." Id. ¶¶ 163–

---

[5] In South Dakota, under the economic loss doctrine, there is a "prohibition against tort actions to recover solely economic damages for those in contractual privity . . . to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." Kreisers Inc., 852 N.W.2d at 421 (internal citations omitted). Although there are some exceptions to the economic loss doctrine, generally "damages for foreseeable, negligently caused losses arising under a contract are limited to the terms of the contract." S.D. Wheat Growers Ass'n v. Chief Indus., Inc., 337 F. Supp. 3d 891, 903 (D.S.D. 2018) (citing 6 Bruner & O'Connor Construction Law § 19:10 (2018) (collecting cases)). In Kreisers Inc., the Supreme Court of South Dakota declined to extend the economic loss doctrine to claims for professional negligence generally and specifically to a medical supply company's claim against a title company which, while contractual, involved the mishandling of an intended § 1031 property exchange. 852 N.W.2d at 422.

65.    As "Muth was bound to follow the Contract Documents prepared, interpreted, and administered by" Burns & McDonnell, Muth alleges "[i]t was reasonably foreseeable that Muth could be harmed by [Burns & McDonnell's] negligent development of the design for the Project." Id. ¶¶ 160, 166.  Muth alleges that Burns & McDonnell breached that duty, which caused Muth to suffer damages. Id. ¶¶ 176–78, 180–82.

In addition, Muth alleges Burns & McDonnell's duty to Muth included a duty to interpret and administer the Contracts Documents in good faith, which required Burns & McDonnell to (1) provide clear and effective direction in a timely manner; (2) approve necessary design changes in a timely manner; (3) accept justified change order proposals; (4) respond impartially to change order proposals; (5) respond to formal claims under Article 12 of the Contract Documents; (6) acknowledge and fairly review supporting claim documentation; and (7) advise Pierre to approve reasonable compensation for Muth. Id. ¶¶ 167–74.  Muth alleges that it was reasonably foreseeable Muth would be harmed by Burns & McDonnell's failure to properly interpret and administer the Contract Documents.  Id. ¶ 175.  Muth alleges that Burns & McDonnell failed to interpret and administer the Contract Documents in good faith,

> including but not limited to failing to provide clear and effective direction in a timely manner, refusing to approve necessary design changes in a timely manner, refusing to accept justified change order proposals, refusing to respond impartially to change order proposals, refusing to respond altogether to Muth's Claim, ignoring supporting claim documentation, and advising [Pierre] to deny reasonable compensation in response to justified change order proposals and formal claims.

Id. ¶ 179.  As a result of this breach, Muth alleges it suffered damages. Id. ¶¶ 180–82.

Similarly, in its professional negligence claim against Burns & McDonnell, Rice Lake West alleges that Burns & McDonnell "breached its duty to Rice Lake West to develop a design free of material defects by, among other things, providing a defective, unconstructible [sic] design which failed to meet the applicable industry standard of care." Doc. 48 ¶ 104.  Rice Lake West

alleges this breach caused it to suffer damages. Id. ¶¶ 106–08. Rice Lake West also alleges Burns & McDonnell breached its duty to

> interpret and administer the Contract Documents during the construction phase of the Project in good faith by . . . failing to provide clear and effective direction in a timely manner, refusing to approve necessary design changes in a timely manner, refusing to impartially review and accept justified change order proposals, and refusing to impartially review and accept Rice Lake West's formal claim under Article 12 of the Prime Contract.

Id. ¶ 105. Rice Lake West alleges this breach caused it to suffer damages. Id. ¶¶ 106–08.

As Burns & McDonnell's arguments to dismiss Muth and Rice Lake West's professional negligence claims are substantially the same, this Court will address Burns & McDonnell's arguments for dismissing the professional negligence claims together. Beginning with the negligence design aspect of Muth and Rice Lake West's professional negligence claims, Burns & McDonnell argues that that it does not owe a duty to either contractor because (1) Burns & McDonnell did not warrant or guarantee the accuracy of the designs; (2) the Contract Documents specifically contemplate the possibility of inaccuracies and "provide for adjustments to the contract price and time in the event of such differing site conditions"; and (3) Burns & McDonnell successfully engineered a functional facility. Doc. 45 at 14; Doc. 53 at 16–17. Burns & McDonnell argues that the damages both parties suffered were not foreseeable. Doc. 45 at 15–16; Doc. 53 at 18–19. Burns & McDonnell refers this Court to the contractual provisions where the contractor parties acknowledge that Burns & McDonnell was not guaranteeing the accuracy of the design or assuming responsibility for the accuracy or completeness of the information as well as the provisions that required the contractors to review and check the information and to initiate a process to be compensated for any extra work. Doc. 45 at 15–16; Doc. 53 at 17–19. Finally, Burns & McDonnell asserts that the design for the Pierre project did not ultimately fail, which factually

18

distinguishes this case from other professional negligence cases.[6] Doc. 45 at 16–17; Doc. 53 at 19–21.

As a professional engineering firm, Burns & McDonnell, "provid[ing] professional services[,] has a duty to the person from whom the services are performed to use such skill and care ordinarily exercised by others in the same profession." Kreisers Inc., 852 N.W.2d at 420. Under South Dakota law, "an engineering firm could owe a duty to reasonably draft and interpret the project specifications and [] it is foreseeable that a contractor, bound to follow the specifications prepared by the engineering firm, could be harmed by the firm's negligence in drafting and interpreting the specifications" despite lacking privity of contract. Domson, Inc., 918 N.W.2d at 405 (citing Mid-Western Elec., Inc., 500 N.W.2d at 254). Muth and Rice Lake West have both pleaded that they were contractors bound to follow the specifications prepared by engineering firm Burns & McDonnell. Doc. 40 ¶ 160; Doc. 48 ¶ 28. Therefore, Burns & McDonnell owed both Muth and Rice Lake West a duty to reasonably draft the project design as it was foreseeable the contractor and subcontractor could be harmed by Burns & McDonnell's negligence in design despite Burns & McDonnell lacking contractual privity with either contractor.

Burns & McDonnell is a third-party beneficiary of the contract between Pierre and Rice Lake West, which in turn is incorporated into the subcontract between Rice Lake West and Muth. However, like the engineering firm in Domson, Inc., Burns & McDonnell's duty to "reasonably draft and interpret the project specifications" existed before and independent of the contract between Pierre and Rice Lake West, or the subcontract involving Muth. See Domson, Inc., 918

---

[6] In its reply briefs, Burns & McDonnell reasserts that this case is distinguishable from Mid-Western Electric given the finished, functional facility and considering the relevant contract documents. Doc. 56 at 2–7; Doc. 59 at 3–7. Such information appears to be outside the allegations of the contractors and not embraced by the pleadings. See Zean, 858 F.3d at 526.

N.W.2d at 405.  Therefore, according to <u>Domson, Inc.</u>, in designing and drafting the plans, Burns & McDonnell "could not have been exercising authority or responsibility" under any of the contractual provisions, and these contractual provisions do not eliminate Burns & McDonnell's duty or insulate Burns & McDonnell from all liability in tort.  <u>Id.</u>

### C. Allegation of Contract Administration Duty

Relying on the language of the exculpatory clause, Burns & McDonnell then argues that both Muth and Rice Lake West have failed to plead a plausible claim for negligence based on a failure to administer the General Contract as there are no factual allegations that Burns & McDonnell did not interpret and administer the Contract Documents in good faith; Burns & McDonnell reads the allegations as containing only conclusory statements and asserts that in the absence of allegations of bad faith, the negligence-in-administering-the-documents claims are barred under the exculpatory paragraph.  Doc. 45 at 17–22; Doc. 53 at 21–25.  Muth and Rice Lake West argue that they have pleaded allegations of actions not taken in good faith, and that any reliance on the exculpatory paragraph contractual provision is an affirmative defense that Burns & McDonnell bears the burden of establishing.  Doc. 51 at 9–13; Doc. 58 at 22–29.  In its reply to Muth, Burns & McDonnell argues that Muth has failed to plead facts plausibly suggesting dishonesty, fraud, or bad motive, and therefore, its negligent administration claim fails.  Doc. 56 at 78.  In its reply to Rice Lake West, Burns & McDonnell raises for the first time that it does not owe a duty to Rice Lake to reasonably interpret and administer the contract documents,[7] but even

---

[7] As Burns & McDonnell only argued that they did not owe Rice Lake West a duty to administer the contracts in good faith in their reply, this Court does not need to consider it.  <u>See United States v. Carrillo</u>, 380 F.3d 411, 413 n.3 (8th Cir. 2004) ("Typically, absent some reason for failing to raise an argument in an opening brief, we do not consider an argument first raised in a reply brief. [] [The moving party] has offered no justification for his failure to raise these issues in its initial brief; consequently, we can choose not to review it."); <u>Meidinger v. Ragnone</u>, 661 F. App'x 449, 452 (8th Cir. 2016) ("However, because [the moving party] offers no reason for failing to raise

if it did, Rice Lake West has failed to show bad faith and therefore the claim is barred by the exculpatory paragraph. Doc. 59 at 8–11.

In the Amended Complaint, Doc. 40, and the Third-Party Amended Complaint, Doc. 48, Muth and Rice Lake West have plausibly pleaded claims based on a failure by Burns & McDonnell to properly administer the General Contract. See Doc. 40 ¶¶ 47, 65–76, 81; Doc. 48 ¶¶ 41–42, 45–47; Iqbal, 556 U.S. at 678; Fed. R. Civ. P. 8(a)(2). Muth's allegations describe in detail Burns & McDonnell's prejudicial delays, unwarranted denials of proposed amendments to the designs and contracts, and refusal to provide clear direction. See Doc. 40 ¶¶ 47, 65–76, 81. Similarly, Rice Lake West's claim alleges Burns & McDonnell "misrepresented material facts in the Project Manual through concealment and false statements," "repeatedly breached the agreements," "unreasonably and without justification failed to approve or improperly rejected" PCOs, "failed to respond to Claims," and "failed and refused to grant or approve appropriate adjustments to the Contract Times and Contract Price." Doc. 48 ¶¶ 41–42, 45–47. These claims are sufficient to contend an absence of good faith on the part of Burns & McDonnell.

When considering the impact of the attached contract documents on the viability of these claims, this Court again notes that the language in the exculpatory paragraphs in this case and Domson, Inc. is functionally the same. Compare Domson, Inc., 918 N.W.2d at 399–400 with Doc. 53-2 ¶ 10.08.A. But an exculpatory paragraph is "an affirmative defense" to the negligent administration and interpretation of a contract claim and the party asserting the affirmative defense bears the burden of establishing a prima facie case of good faith. Domson, Inc., 918 N.W.2d at 403, 405. At the motion to dismiss stage, "a defendant [generally] cannot render a complaint

---

this argument in his opening brief, it has been waived.") (collecting cases). Regardless, even if this Court were to consider this argument, it would find that Muth and Rice Lake West have plausibly alleged a duty based on Burns & McDonnell's alleged role in administering the contracts.

defective by pleading an affirmative defense," and "the possible existence of [an affirmative] defense is not ordinarily a ground for Rule 12(b)(6) dismissal." Weatherly v. Ford Motor Co., 994 F.3d 940, 943 (8th Cir. 2021) (cleaned up and citation omitted).

The exception to this principle is when the plaintiff's complaint pleads all the elements that make the affirmative defense apply. See Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 983 (8th Cir. 2008) ("If an affirmative defense . . . is apparent on the face of the complaint, . . . that [] can provide the basis for dismissal under Rule 12(b)(6)."); see also Indep. Tr. Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 935 (7th Cir. 2012) ("[W]hen a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate."). Neither Muth's Amended Complaint nor Rice Lake West's Amended Third-Party Complaint and Crossclaim establish Burns & McDonnell's good faith defense. Muth's allegations do not illustrate Burns & McDonnell's "honesty in fact concerning conduct or a transaction." Domson, Inc., 918 N.W.2d at 404; see Doc. 40 ¶¶ 47, 65–76, 81. Similarly, Rice Lake West's claim does not make out Burns & McDonnell's good faith defense. Doc. 48 ¶¶ 41–42, 45–47. As the good faith affirmative defense is not apparent on the face of either claim, Burns & McDonnell's invocation of the exculpatory clause does not provide grounds for dismissal of either Muth's or Rice Lake West's professional negligence claim against Burns & McDonnell under Rule 12(b)(6). Noble Sys. Corp., 543 F.3d at 983; Indep. Tr. Corp., 665 F.3d at 935.

For the foregoing reasons, this Court denies Fourth-Party Defendant Burns & McDonnell's Motion to Dismiss Muth's Amended Complaint, Doc. 45, in its entirety and denies Fourth-Party Defendant Burns & McDonnell's Motion to Dismiss Rice Lake West's Amended Third-Party Complaint and Crossclaim, Doc. 53, as to the professional negligence claim.

## V.    Rice Lake West's Contribution and Indemnity Claim

Rice Lake West has also pleaded a contribution and indemnity claim against Fourth-Party Defendant Burns & McDonnell. Doc. 48 at 49. Burns & McDonnell moves to dismiss this count pursuant to Federal Rule of Civil Procedure 12(b)(6) by arguing that the claim fails as a matter of law. Doc. 53 at 25. Burns & McDonnell argues that (1) "Rice Lake [West] fails to identify any contract or contractual provision that would entitle it to contractual contribution or contractual indemnity [from Burns & McDonnell] for the claims asserted by [Pierre] or Muth"; (2) that Rice Lake West's "claim for contribution does not exist until it has paid to discharge any purported common liability or has paid more than its pro rata share thereof"; (3) Rice Lake West has not pleaded how Burns & McDonnell and Rice Lake West would be jointly liable for Pierre or Muth's claims against Rice Lake West as none of them are negligence claims; (4) Burns & McDonnell did not owe a duty to Rice Lake West (referring to its arguments in Doc. 45); and (5) Rice Lake West has failed to plead any of the limited situations where South Dakota recognizes an indemnity claim or that it is without fault. Doc. 53 at 26–29. In its response to Burns & McDonnell, Rice Lake West contends that "the damages claimed by Muth and the City were in fact caused by" Burns & McDonnell, but "Rice Lake West concedes that it has not specifically alleged that it has discharged any specific portion of [Burns & McDonnell's] liability" while noting that discovery may show otherwise. Doc. 58 at 29. Rice Lake West requests that if this Court dismiss the contribution and indemnity claim, it do so without prejudice. Id. at 30. Burns & McDonnell argues in reply that Rice Lake West's concession is dispositive that this claim is not ripe, Rice Lake West

has failed to plead joint tort liability for Muth's claims, and Rice Lake West is not without fault. Doc. 59 at 11.

The Amended Third-Party Complaint and existing record leave unclear whether there exists any specific contractual provision that would entitle Rice Lake West to contractual contribution or contractual indemnity from Burns & McDonnell. See Doc. 53-2 (attaching only a portion of the 86-page General Contract). Rice Lake West does not claim to have any contract directly with Burns & McDonnell but does allege that Burns & McDonnell "expressly or implicitly agreed to" aspects of the Prime Contract executed between Pierre and Rice Lake West. See Doc. 48 ¶¶ 23, 38. Regardless of the existence of contractual contribution or contractual indemnity, there may exist a basis for legal or equitable contribution or indemnification. Contrary to Burns & McDonnell's summary of Pierre's claims, see Doc. 53 at 27, Pierre has brought two counterclaims against Rice Lake West: one for breach of contract and one for negligence. Doc. 16 at 5–7. Muth has brought three claims against Rice Lake West for breach of contract, unjust enrichment, and payment of bond. Doc. 40 at 12–17.

South Dakota recognizes both indemnification and contribution as available remedies for a tortfeasor, but each are distinct. Avera St. Luke's Hosp. v. Karamali, 848 F. Supp. 2d 1017, 1020–21 (D.S.D. 2012) (citing SDCL § 15-8-12; SDCL ch. 56-3; Ebert v. Fort Pierre Moose Lodge No. 1813, 312 N.W.2d 119, 122–23 (S.D. 1981)); Jorgensen Farms, Inc. v. Country Pride Coop., Inc., 824 N.W.2d 410, 414 n.2 (S.D. 2012). "A right to contribution arises when a party to a joint, or joint and several, obligation satisfies more than his share of the claim against all," but "indemnity is an 'all-or-nothing' proposition where the party seeking indemnification must show an absence of proportionate fault to shift the entire liability." Jorgensen Farms, Inc., 824 N.W.2d at 414 n.2 (cleaned up and citation omitted). A claim for contribution or indemnity fails as a matter

24

of law where the plaintiff is precluded in some way by law from seeking contribution or indemnity from the defendant. See Hagemann ex rel. Est. of Hagemann v. NJS Eng'g, Inc., 632 N.W.2d 840, 846 (S.D. 2001) (affirming trial court's dismissal of complaint as statutory provision barred plaintiff from seeking contribution or immunity against defendant).

"Contribution is available where there is common liability to an injured person in tort." City of Spearfish v. Duininck, Inc., No. CIV. 14-5039, 2017 WL 2455058, at *2 (D.S.D. June 6, 2017). "'[J]oint tort-feasors' means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." SDCL § 15-8-11. "A joint tort-feasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof." Id. § 15-8-13. Contribution is only permitted "where there is a common liability to an injured person in tort and there can be no contribution where the injured person has no right of action against the third-party defendant." Hagemann, 632 N.W.2d at 843–44 (cleaned up and citation omitted).

Whether or not a duty exists in a negligence claim is a question of law. City of Spearfish, 2017 WL 2455058, at *2. "When determining whether a duty exists, the court asks whether 'a relationship exists between the parties such that the law will impose upon the defendant a legal obligation of reasonable conduct for the benefit of the plaintiff,'" and "a duty that arises out of a contract may also give rise to tort liability." Id. (first quoting Casillas v. Schubauer, 714 N.W.2d 84, 88 (S.D. 2006); then citing Limpert v. Bail, 447 N.W.2d 48, 51 (S.D. 1989)). The Restatement (Second) of Torts, which "[t]he South Dakota Supreme Court advises trial courts to look to . . . determine whether a duty exists," id. at *3, states in relevant part:

> One who undertakes, gratuitously or for consideration, to render services to another
> which he should recognize as necessary for the protection of a third person or his

25

things, is subject to the liability for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (A.L.I. 1965).

In City of Spearfish, the defendant contractor seeking contribution owed a duty to the underlying plaintiffs as "the contract established a relationship requiring the contractor to exercise reasonable care in the construction of the [project] and that failure to exercise reasonable care could give rise to tort liability," which meant the underlying plaintiffs "had a possible tort claim against" the defendant contractor. 2017 WL 2455058, at *3 (first citing the Restatement (Second) of Torts § 324A, then Hayward Baker, Inc. v. Shirttail Gulch Road Dist., Inc., No. Civ. 10-5012, 2021 WL 3929211, at *5 (D.S.D. Sept. 10, 2012)).  The court found the underlying plaintiffs' "decision not to bring a tort claim against [the defendant contractor] [did] not affect [the defendant contractor's] right to contribution from joint tortfeasors because contribution is available to all tortfeasors that 'could' be liable." Id.  Finally, after finding that the underlying plaintiffs "had a possible remedy in tort against [the defendant contractor], . . . and a possible remedy in tort against [the other parties]," the court held that the defendant contractor was "entitled to contribution from [the other parties] under SDCL § 15–8–17." Id. at *4.

Therefore, in the absence of a statute like the worker's compensation statute rendering Burns & McDonnell immune from suit, for Rice Lake West to be able to seek contribution, (1) Rice Lake West must owe a duty to Muth and Pierre; (2) Muth and Pierre must have been able to or have brought a tort claim against Rice Lake West; and (3) Muth and Pierre must also have a possible remedy in tort against Burns & McDonnell. See City of Spearfish, 2017 WL 2455058, at

*2–4.  To prevail on contribution, Rice Lake West must eventually show Burns & McDonnell acted negligently and that Burns & McDonnell's negligence caused or contributed to Muth or Pierre's harm, for which Rice Lake West was also responsible.  See Long v. Smithfield Packaged Meats Corp., 736 F. Supp. 3d 681, 694 (D.S.D. 2024).

Beginning with Muth, first, enough has been plead to allege that Rice Lake West owes a duty to Muth as a matter of law.  See Doc. 40; Kreisers Inc., 852 N.W.2d at 420 ("First Dakota owed a duty of care to Kreisers beyond the contract between the two parties . . . because an independent duty to exercise reasonable care arose from extraneous circumstances not constituting the elements of the contract.").[8]  Second, the existence of this duty at least arguably, depending on application of the economic loss doctrine, permits Muth to pursue a negligence claim against Rice Lake West, despite the fact that it has not yet chosen to do so.  Muth also has a remedy in tort against Burns & McDonnell, and Muth has already brought a professional negligence claim against Burns & McDonnell.  Burns & McDonnell's motion to dismiss the legal and equitable contribution claim concerning Muth's claims against Rice Lake West is denied.

As to claims involving Pierre, Rice Lake West owes a duty to Pierre as a matter of law as "the contract" between Pierre and Rice Lake West "established a relationship requiring the contractor to exercise reasonable care in the construction . . . and that failure to exercise reasonable care could give rise to tort liability."  City of Spearfish, 2017 WL 2455058, at *3.  The existence of this duty potentially could permit Pierre to bring a negligence claim, notwithstanding the economic loss doctrine, against Rice Lake West, which Pierre did in its counterclaim.  See Doc. 16 at 6.  Pierre also has a possible tort remedy against Burns & McDonnell, because Burns &

---

[8] Only one page of the Subcontract, executed between Muth and Rice Lake West, is a part of the record before this Court.  See Docs. 45-1, 53-1 (attaching first page of Subcontract to motions to dismiss).

McDonnell, "provid[ing] professional services" to Pierre, "has a duty to the person from whom the services are performed to use such skill and care ordinarily exercised by others in the same profession." Kreisers Inc., 852 N.W.2d at 420 (cleaned up and citation omitted). In addition, it was foreseeable that Pierre would be injured by Burns & McDonnell's failure to discharge that duty. Mid-Western Elec., Inc., 500 N.W.2d at 254; Muhlenkort, 530 N.W.2d at 662. Burns & McDonnell's motion to dismiss the legal and equitable contribution claim concerning Pierre's claims against Rice Lake West is denied.

In contrast to contribution, "indemnification arises when a party discharges a liability that equitably should have been discharged by another." Weiszhaar Farms, Inc. v. Tobin, 522 N.W.2d 484, 492 (S.D. 1994). Under South Dakota law, "indemnity is an 'all-or-nothing' proposition where the party seeking indemnification must show an absence of proportionate fault to shift the entire liability." Id. "The only way in which liability could be shifted is if" the third-party defendant from whom the defendant seeks indemnification "breached a duty to" the underlying plaintiff or defendant. Manning v. First Fed. Sav. & Loan Ass'n of Rapid City, 441 N.W.2d 924, 926 (S.D. 1989) (holding that where third-party defendant did not owe a duty to either the plaintiff or the defendant as a matter of law, indemnification does not apply). Here, as this Court has analyzed above, Burns & McDonnell owes a duty as a matter of law to Muth, Pierre, and Rice Lake West. Therefore, Burns & McDonnell's motion to dismiss the indemnity claim concerning Pierre's claims against Rice Lake West and concerning Muth's claims against Rice Lake West is denied.

Enough is plead to allow for Rice Lake West's contribution and indemnity claim to survive a motion to dismiss, and the viability of the claim is one better decided on summary judgment. For the foregoing reasons, this Court denies Fourth-Party Defendant Burns & McDonnell's Motion

to Dismiss Rice Lake West's Third-Party Amended Complaint and Crossclaim, Doc. 53, as to the contribution and indemnity claim.

## VI.     Conclusion

For the foregoing reasons, it is hereby

ORDERED that Fourth-Party Defendant Burns & McDonnell's Motion to Dismiss Muth's Amended Complaint, Doc. 45, is denied.  It is further

ORDERED that Fourth-Party Defendant Burns & McDonnell's Motion to Dismiss Rice Lake West's Third-Party Amended Complaint and Crossclaim, Doc. 53, is denied.

DATED this 12th day of December, 2025.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE